**Donald EBY and Donald Graber, Plaintiffs,**

v.

**PRODUCERS CO–OP, INC., a Michigan corporation, Defendant.**

No. 1:96–CV–567.

United States District Court,
W.D. Michigan,
Southern Division.

Feb. 12, 1997.

---

Donald R. France, Marcellus, MI, Christopher L. Gallinari, Nicholas P. Iavarone, Bellows & Bellows, Chicago, IL, for Plaintiffs.

Stephen A. Rothschild, Shumaker, Loop & Kendrick, Toledo, OH, for Defendant.

## OPINION

ROBERT HOLMES BELL, District Judge.

Before the Court is Defendant's motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6). The Plaintiffs filed their complaint on July 16, 1996. In the complaint, Plaintiffs who are Michigan farmers, claim that Producers, a grain elevator operator with a principal place of business in Constantine, Michigan, marketed to Plaintiffs hedge to arrive contracts (HTAs)[1] which were fraudulent and in violation of the Commodity Exchange Act 7 U.S.C. § 1 et seq.

The Plaintiffs claim that the HTAs in question were set up to avoid the rules, regulations and protections of the Commodity Futures Trading Commission and the regulations of the Securities Exchange Commission. Plaintiffs claim that they were induced to sell future crops through the use of HTAs which allowed for unlimited rolling.

Plaintiffs claim that the Defendants concealed the risks involved with this type of HTA. Due to the market conditions in 1995 and 1996, the cost of rolling the HTAs was much greater than anticipated.[2]

Plaintiffs' complaint include nine counts. (1) Violation of RICO, 18 U.S.C. § 1962(c),

(2) Violation of RICO, 18 U.S.C. § 1962(a), (3) Violation of the Commodity Exchange Act, 7 U.S.C. §§ 1 et seq. claiming that the HTA's in question are illegal off exchange futures contracts, Defendants misrepresented the risk, failed to provide risk disclosure, failed to segregate funds, failed to provide confirmation and monthly statements and failed to supervise handling of Plaintiffs' accounts, (4) Declaratory Relief—Plaintiffs claim that they do not owe Producers under the contracts, (5) Recision, (6) Breach of Fiduciary Duty, (7) Fraud, (8) Breach of Contract and (9) Negligence.

### I.

In its motion, the Defendant claims that the three federal claims, the two RICO violations and the CEA violation, should be dismissed. The Defendant further states that if these claims are dismissed, this Court lacks supplemental jurisdiction over the remaining state law claims and that the Plaintiffs' declaratory judgment claim cannot be a basis for federal jurisdiction.

In evaluating a motion to dismiss under Rule 12(b)(6), a court must construe the complaint in the light most favorable to the plaintiffs, accept plaintiffs' factual allegations as true, and determine whether the plaintiffs

---

1. In a basic HTA, the farmer and elevator enter a contract for the sale of a fixed number of bushels of grain for delivery at a particular time in the future. The futures reference price, the price per bushel on a contract market for a particular type of grain during certain futures months, is fixed, while the basis, a local adjustment to the per bushel price that reflects local variables, floats until it is fixed by the farmer before delivery. If the farmer does not set the basis by a specified time, the basis is automatically set by the terms of the HTA. In order to eliminate the risk of change in the futures reference price, the elevator hedges its contract with the farmers. The elevator accomplishes this by establishing a short futures position, an equal and opposite position, in the futures market.

   Certain HTAs, sometimes called flex-HTAs, allow the farmer to roll the delivery date to sometime in the future. When the HTA is rolled, the elevator buys back the futures hedge and rehedges by selling a new futures contract. The spread between the bought back and sold futures is attached to the price per bushel of the original HTA. This change could be either a debit or a credit. The farmer runs the risk of having this spread run against him.

2. As stated in footnote 1, when an HTA is rolled and the elevator rehedges, the spread between the bought back and sold futures is attached to the price per bushel of the original contract. In 1995 and 1996, this spread often was attached as a substantial debit. John E. Tull, acting chairman of the Commodity Futures Trading Commission, explained that the historic price relationships between various months and crop years did not occur as anticipated. "[D]ue to market fundamentals, the markets have not acted as anticipated: beginning in March 1996, the 1996 old-crop futures prices rose to levels well above those for the fall harvest and remained there. An unusually large price inversion developed that made the current value of the commodity higher than the expected value at harvest in the fall. Apparently, producers who had planned to roll their delivery obligations forward found that it cost them a lot more than they had anticipated based on historical price relationships." Prepared Testimony of John E. Tull, acting chairman of the CFTC, before the House Committee on Agriculture, July 24, 1996.

undoubtedly can prove no set of facts in support of their claim entitling them to relief. *Columbia Natural Resources, Inc. v. Tatum,* 58 F.3d 1101, 1109 (6th Cir.1995), *cert. denied* — U.S. ——, 116 S.Ct. 1041, 134 L.Ed.2d 189(1996).

## II.

■ In their RICO claims, based on 18 U.S.C. §§ 1962(a) and 1962(c), the Plaintiffs allege that the Defendant has engaged in the predicate acts of mail fraud and wire fraud. The Plaintiffs claim that "Producers sent the HTA and rollovers through the mail and the futures contracts it purchased and sold on the CBOT [Chicago Board of Trade] in relation thereto were confirmed by use of the mail", and "Producers made use of interstate telephone transmission lines to effectuate the HTA contracts and the commodity futures contracts purchased and sold on the CBOT to offset the HTA contracts." Plaintiffs' Complaint ¶¶ 18 and 20.

"Courts have repeatedly held in RICO cases alleging mail fraud and wire fraud as the 'predicate acts', the underlying fraudulent activities must be pled with particularity." *Berent v. Kemper Corp.,* 780 F.Supp. 431, 448 (E.D.Mich.1991); *aff'd* 973 F.2d 1291 (6th Cir.1992); *Kenty v. Bank One,* 92 F.3d 384, 390 (6th Cir.1996).

Federal Rules of Civil Procedure, Rule 9(b) states "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be plead with particularity." Fed.R.Civ.P. 9(b). "Courts have been particularly sensitive to Fed.R.Civ.P. 9(b)'s pleading requirements in RICO cases in which the 'predicate acts' are mail fraud and wire fraud, and have further required specific allegations as to *which* defendant caused *what* to be mailed (or made *which* telephone calls), and *when* and *how* each mailing (or telephone call) furthered the fraudulent scheme." *Berent,* 780 F.Supp. at 448 (emphasis in original); (Citing *Bennett v. Berg,* 685 F.2d 1053 (8th Cir.1982), *cert. denied,* 464 U.S. 1008, 104 S.Ct. 527, 78 L.Ed.2d 710 (1983); *Barker v. Underwriters at Lloyd's, London,* 564 F.Supp. 352, 356 (E.D.Mich.1983)).

The Seventh Circuit has stated that " 'loose references to mailings and telephone calls' in furtherance of a purported scheme to defraud will not do.... Instead, the plaintiff must, within reason, describe the time, place, and content of the mail and wire communications, and it must identify the parties to these communications." *Jepson Inc. v. Makita Corp.,* 34 F.3d 1321, 1328 (7th Cir. 1994); see also *Vennittilli v. Primerica,* 943 F.Supp. 793, 799 (E.D.Mich.1996).

Plaintiffs claim that they should not be required to plead with specificity because specific information is under the Defendant's control. In *Berent v. Kemper* the court rejected a plaintiff's claim that they should be entitled to pursue discovery rather than comply with the requirements of Rule 9(b). The court quoted *NL Industries Inc. v. Gulf & Western Industries, Inc.,* 650 F.Supp. 1115 (D. Kansas 1986): "[Rule 9(b)'s] requirement of greater specificity is intended to protect defendants from the harm that results from charges of serious wrongdoing, and to give defendants notice of the conduct complained of. Complaints alleging fraud should seek redress for a wrong, rather than attempt to discover unknown wrongs." *Berent* 780 F.Supp. at 448–449 quoting *NL Industries Inc.,* 650 F.Supp. at 1129–30.

The Plaintiffs claim that if Rule 9(b) is read in connection with Federal Rules of Civil Procedure, Rule 8, their complaint sufficiently states a claim of mail and wire fraud. In *Michaels Building Co. v. Ameritrust Co.,* 848 F.2d 674 (6th Cir.1988), the Sixth Circuit explained that a court "must factor in the policy of simplicity in pleading which the drafters codified in Rule 8" when deciding if a claim has been stated with sufficient particularity. *Id.* at 679. However, in *Michaels Building,* the Court found that the fraud complaint was sufficiently detailed because it specified "the parties and the participants to the alleged fraud, the representations made, the nature in which the statements are alleged to be misleading and false, the time, place and contents of the representations, the fraudulent scheme, the fraudulent intent of the defendants, reliance on the fraud, and the injury resulting from the fraud." *Id.* In addition, the Sixth Circuit has said that generalized, conclusory allegations lack the particularity necessary to plead fraud under the

*Michaels Building* standard. *Craighead v. E.F. Hutton,* 899 F.2d 485, 491(6th Cir. 1990).[3]

This Court finds that the Plaintiffs' claims of mail and wire fraud have not been plead with sufficient particularity. The complaint is conclusory in nature and merely recites legal conclusions. Therefore dismissal of both RICO claims is appropriate under Rule 12(b)(6).

## III.

■ This Court finds that each of the RICO claims fails under 12(b)(6) for additional reasons. In order to establish a violation under 18 U.S.C. § 1962(c), "a civil plaintiff must prove '(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity.' " *Shuttlesworth v. Housing Opportunities Made Equal,* 873 F.Supp. 1069, 1074 (S.D.Ohio 1994) (quoting *Sedima, S.P.R.L. v. Imrex Co.,* 473 U.S. 479, 496, 105 S.Ct. 3275, 3285, 87 L.Ed.2d 346 (1985)). A § 1962(c) claim "must include factual allegations supporting each element of the violation with reasonable specificity." *Shuttlesworth,* at 1074 (citing *Jennings v. Emry,* 910 F.2d 1434, 1435 (7th Cir.1990)).

The Sixth Circuit has explained that in order to be considered a participant in the affairs of a RICO enterprise, an individual must have some part in directing those affairs, and an individual cannot be held liable unless they have participated in the operation or management of the enterprise itself *Stone v. Kirk,* 8 F.3d 1079, 1091–92 (6th Cir.1993)(citing *Reves v. Ernst & Young,* 507 U.S. 170, 183, 113 S.Ct. 1163, 1172, 122 L.Ed.2d 525 (1993)). In *University of Maryland v. Peat, Marwick Main & Company,* the Third Circuit has explained that "the person must knowingly engage in 'directing the enterprise's affairs' through a pattern of racketeering activity." 996 F.2d 1534, 1539 (3rd Cir.1993) (citing *Reves,* 507 U.S. at 179, 113 S.Ct. at 1170, 122 L.Ed.2d 525).

■ The Plaintiffs' complaint merely concludes that the Defendant "has directly or indirectly participated in the affairs of the Plaintiffs' farming operation ..." Plaintiffs' Complaint at ¶ 24. This Court does not find anything that indicates that the Defendant knowingly engaged in directing the Plaintiffs' farming operations. Therefore, the Defendants have failed to sufficiently allege that the Defendants participated in the operation of the Plaintiffs farming enterprise.

## IV.

■ Section 1962(a) prohibits the use or investment of "any income, or proceeds of that income, derived ... from a pattern of racketeering activity" in "the establishment or operation of, any enterprise engaged in, or the activities of which affect, interstate or foreign commerce." 18 U.S.C. § 1962(a). In *Gotham Print v. American Speedy Printing Centers,* the court explained that "[t]he gravamen of a Section 1962(a) claim is an injury directly related to the investment or use of tainted money in the enterprise; Section 1962(a) is not applicable to injury from the racketeering activity itself." 863 F.Supp. 447, 460–61 (E.D.Mich.1994) (citations omitted). "[I]n order to state a viable 1962(a) claim, Plaintiff must allege a separate and traceable injury 'stemming directly from the defendants' alleged use or investment of their illegally obtained income in the [RICO] enterprise.' " *Id.* quoting *Craighead v. E.F. Hutton & Co.,* 899 F.2d 485, 494 (6th Cir. 1990). The plaintiff must be able to show that the defendant invested illegally obtained proceeds in the enterprise, and that this investment caused the plaintiff's harm. *Gotham Print* 863 F.Supp. at 461. It is not sufficient to only allege injuries traceable to the alleged predicate acts. *Craighead,* 899 F.2d at 494 (citing *Grider v. Texas Oil & Gas Corp.,* 868 F.2d 1147, 1149 (10th Cir.), *cert. denied,* 493 U.S. 820, 110 S.Ct. 76, 107 L.Ed.2d 43(1989); *Romano v. Merrill Lynch, Pierce, Fenner & Smith,* 834 F.2d 523, 527 n. 8 (5th Cir.1987), *cert. denied,* 487 U.S. 1205, 108 S.Ct. 2846, 101 L.Ed.2d 883 (1988)).

■ Plaintiffs claim they must only show that the Defendant received income from a

---

**3.** The 12(b)(6) fact that the Defendant has answered the complaint does not act as a waiver of the Defendant's defense. Fed.R.Civ.P. 12(h)(2),

*Romstadt v. Allstate Insurance Co.,* 59 F.3d 608, 610–11 (6th Cir.1995).

pattern of racketeering activity and that the Defendant used or invested that income in an enterprise. affecting interstate commerce. The cases which they cite state that it is not necessary to show an injury from the use or investment of racketeering income. See *In re ContiCommodity Services, Inc. Securities Litigation,* 733 F.Supp. 1555 (N.D.Ill.1990); *Hinsdale Women's Clinic v. Women's Health Care of Hinsdale,* 690 F.Supp. 658 (N.D.Ill. 1988); *Bachmeier v. Bank of Ravenswood,* 663 F.Supp. 1207 (N.D.Ill.1987). However, these cases are in conflict with the Sixth Circuit's decision in *Craighead v. E.F. Hutton.*

This Court finds that the Plaintiffs have not pled a separate and traceable injury which stemmed directly from the Defendant's alleged use or investment of the illegally obtained income from the alleged RICO enterprise. The Plaintiffs have not alleged any facts which show that the Defendant invested illegally obtained proceeds in the enterprise, and that this investment caused the Plaintiffs' harm as is required in the Sixth Circuit.

## V.

■ The gist of the Plaintiffs' CEA claim is that the Defendant's HTA is a disguised commodity futures contract which was executed outside of a proper contract market in violation of a number of provisions of the CEA. Therefore the key determination is whether the contracts are off-exchange futures contracts which are prohibited under the CEA, 7 U.S.C. § 2(i), or a contract which falls under the cash forward contract exclusion expressly exempting it from the reach of the CEA. 7 U.S.C. § 1a(11).

The Plaintiffs have alleged that the HTAs allowed for unlimited rolling. Plaintiff's Complaint ¶ 16(B)(2). The Commodity Futures Trading Commission has recently filed complaints and notices of hearing against Respondents who were involved with marketing HTA contracts. In *In the Matter of Roger J. Wright et al.,* No. 97–2 (Commodity Futures Trading Commission, November 13, 1996) and *In the Matter of Grain Land Cooperative,* No 97–1 (Commodity Futures Trading Commission, November 13, 1996)

the CFTC listed proof of potentially infinite rolling of HTAs as a factor in deciding that they should institute public administrative proceedings. Because potentially infinite roll-overs are a factor in determining if the contract at issue violates the CEA, the Defendants have failed to meet the high standard set out in Rule 12(b)(6). They are unable to show that the Plaintiffs can prove no set of facts in support of their claim that would entitle them to relief. Therefore, Defendants motion to dismiss Plaintiffs claims under the CEA shall be denied.

## VI.

■ The Plaintiffs have also demanded punitive or exemplary damages under the CEA pursuant to 7 U.S.C. § 25(a)(3)(B). Section 25(a)(3)(B) states:

> In any action arising from a violation in the execution of an order on the floor of a contract market, the person referred to in paragraph (1) shall be liable for ... where the violation is willful and intentional, punitive or exemplary damages equal to no more than two times the amount of such actual damages.

*Id.* The Plaintiffs have not alleged that the Defendants willfully and intentionally committed violations of the CEA on the floor of a contract market. Therefore, Defendants motion to dismiss Plaintiffs request for exemplary or punitive damages shall be granted.

## VII.

Because Plaintiffs' CEA claim still exists, Defendants motion to dismiss the remaining state claims for lack of federal question jurisdiction shall be denied.

An order consistent with this opinion shall be entered.

## ORDER

In accordance with the opinion entered this date;

**IT IS HEREBY ORDERED** that Defendant's motion to dismiss Plaintiffs' RICO claims, 18 U.S.C. § 1962(a) and (c), pursuant to Fed.R.Civ.P. Rule 12(b)(6) is **GRANTED.**

**IT IS FURTHER ORDERED** that Defendant's motion to dismiss Plaintiffs' Commodity Exchange Act claims pursuant to Fed. R.Civ.P. Rule 12(b)(6) is **DENIED.**

**IT IS FURTHER ORDERED** that Defendant's motion to dismiss Plaintiffs' claim for punitive or exemplary damages under the Commodity Exchange Act pursuant to Fed. R.Civ.P. Rule 12(b)(6) is **GRANTED.**

**IT IS FURTHER ORDERED** that Defendant's motion to dismiss the remaining state law claims is **DENIED.**