**PAYCOM BILLING SERVICES, INC.,**
**a Delaware corporation, Plaintiff,**

v.

**PAYMENT RESOURCES INTERNATIONAL, a Nevada corporation; Amtrade International Bank, d/b/a AmTrade International Merchant Services, a Georgia corporation; and does 1 through 10, inclusive, Defendants.**

No. 1:01–CV–528.

United States District Court,
W.D. Michigan,
Southern Division.

June 3, 2002.

Todd R. Dickinson, Fisher & Dickinson, P.C., Ada, MI, for Paycom Billing Services, Inc., Plaintiff.

Geoffrey A. Fields, Dickinson Wright, PLLC, Grand Rapids, MI, for AmTrade International Bank, Defendant.

Daniel R. Gravelyn, Warner Norcross & Judd, LLP, Grand Rapids, MI, for Payment Resources International, Defendant.

## *OPINION*

ROBERT HOLMES BELL, Chief Judge.

Plaintiff Paycom Billing Services, Inc. ("Paycom") has filed a federal claim under the federal Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961 *et seq.* against Defendant AmTrade International Bank, d/b/a Am-Trade International Merchant Services ("AmTrade"), and eight state law claims against Defendant AmTrade and Defendant Payment Resources, Inc. ("PRI"). This matter comes before the Court on Defendant AmTrade's motion to dismiss RICO and exemplary damage claims and on Defendant PRI's motion to dismiss the state claims against it in the event the RICO count against Defendant AmTrade is dismissed.

### I.

Defendant AmTrade's motion to dismiss Plaintiff's RICO claim is filed pursuant to Rules 12(c), 12(h)(2), and 9(b) of the Federal Rules of Civil Procedure. Because the motion raises the defense of failure to state a claim upon which relief can be granted, Defendant's 12(c) motion is evaluated under the same standards applied to a 12(b)(6) motion. *Morgan v. Church's Fried Chicken,* 829 F.2d 10 (6th Cir.1987).[1] In reviewing the motion the Court is required to construe the Complaint in the light most favorable to the plaintiff, accept all of the Complaint's factual allegations as

---

1. The interplay between Rules 12(b)(6), 12(c) and 12(h)(2) was explained by the Sixth Circuit as follows:

    Rule 12(h)(2) provides that the Rule 12(b)(6) defense of failure to state a claim upon which relief may be granted can be raised after an answer has been filed by motion for judgment on the pleadings pursuant to Rule 12(c). Where the Rule 12(b)(6) defense is raised by a Rule 12(c) motion for judgment on the pleadings, we must apply the standard for a Rule 12(b)(6) motion in reviewing the district court's decision.

    *Morgan,* 829 F.2d at 10.

true, and determine whether the plaintiff undoubtedly can prove no set of facts in support of the claims that would entitle relief. *Ziegler v. IBP Hog Market, Inc.*, 249 F.3d 509, 511–12 (6th Cir.2001); *Grindstaff v. Green*, 133 F.3d 416, 421 (6th Cir.1998). However, the Court need not accept as true legal conclusions or unwarranted factual inferences. *Mixon v. Ohio*, 193 F.3d 389, 400 (6th Cir.1999) (citing *Morgan*, 829 F.2d at 12).

For purposes of this motion, then, the Court accepts as true the factual allegations in Plaintiff's Complaint.[2] Plaintiff Paycom is a Delaware corporation with its principal place of business in California. ¶ 4. Paycom is in the business of processing credit card transactions for internet websites. ¶ 27. A large part of Paycom's business involves providing credit card transaction services to merchants who deliver content to the adult Internet industry. ¶ 32. VISA and MasterCard consider this an industry that involves particularly high levels of risk for fraud, exposing them to a higher than normal risk of chargebacks. ¶ 32. Because of the nature of these transactions and the risk involved, these transactions command higher than normal processing fees. ¶ 32.

A merchant who desires to accept VISA or MasterCard charges must have a "Merchant Account" with an Acquiring Bank that is a member of the VISA or MasterCard organizations and is authorized to accept credit card charge slips from merchants and submit them to Issuing Banks (banks that issue credit cards). ¶ 14. The merchants Paycom services do not have their own Merchant Account for VISA and/or MasterCard with a Member Bank. Paycom accordingly enters into Merchant

Agreements with Acquiring Banks, and serves as the agent for the web merchants. ¶ 29.

When a customer disputes a charge on a credit card bill, the issuing bank recovers the amount it paid through a charge back from the acquiring bank, which in turn collects the amount, plus an additional fee, from the merchant. If there are too many chargebacks, VISA or MasterCard may impose a fine. ¶ 21.

Defendant PRI is a Nevada corporation with its principal place of business in California. ¶ 5. PRI is an Independent Sales Organization ("ISO") that signs up merchants with Acquiring Banks. ¶ 7. ISOs relieve the Acquiring Banks of the obligation of marketing and providing technical and sales support to merchants. ¶ 24. PRI introduced Paycom to various Acquiring Banks from December 1998 to May 2001 and assisted Paycom in establishing Merchant Accounts with those Acquiring Banks. As each relationship went sour, PRI introduced Paycom to a new Acquiring Bank. ¶ 42.

AmTrade is a Georgia banking corporation with its principal place of business in Grand Rapids, Michigan. ¶ 6. AmTrade is an Acquiring Bank, i.e., it accepts credit card transactions from merchants, submits them to VISA or MasterCard for payment, and then remits payment (less fees) to the merchant. ¶ 14, 19 & 88. Paycom entered into two successive merchant agreements with AmTrade on July 25, 1999, and on June 30 2000. ¶¶ 88 & 94.

This case is but one segment of a more comprehensive case Plaintiff Paycom has filed against PRI and other Acquiring Banks in California.[3] Paycom alleges that

---

**2.** All of the following references to "¶ ----" refer to paragraphs in Plaintiff's Complaint in this action.

**3.** This Court previously denied Plaintiff's motion to dismiss or transfer this case because

Plaintiff's contract with AmTrade contained a Michigan choice of forum provision.

PRI was involved in at least five separate schemes to defraud Paycom (the Comercard scheme, the London Scheme, the Amtrade Scheme, the Minotola scheme, and the Banco Uno Scheme.) ¶ 9. Paycom alleges that each of these schemes comprised a separate "spoke" on the "wheel" of the RICO enterprise known as PRI, with PRI acting as the "hub" that tied all of these schemes (i.e., spokes) together. ¶ 9. Only the alleged AmTrade scheme is at issue in this case. ¶ 10. The allegations against AmTrade are found in paragraphs 88–127 of the Complaint. Paragraphs 47–87 and 127–71 of the Complaint outline the four other alleged schemes. These paragraphs do not mention AmTrade, and Paycom does not suggest that AmTrade was involved in any of these other alleged schemes.

Paycom claims AmTrade and PRI originally represented that AmTrade could handle all of Paycom's credit card processing, but that AmTrade became unable to process Paycom's credit card transactions because of AmTrade's failure to properly register Paycom's account and AmTrade's inability to meet VISA's capital requirements for Acquiring Banks. ¶¶ 88, 91–92, 96, 99, 102–07. AmTrade rejected many transactions, payment was late, and Paycom suffered substantial damages due to AmTrade's insufficient capital and deliberate mis-registration of Paycom's VISA account. ¶ 114. AmTrade also collected fines from Paycom that were attributable to AmTrade's violation of VISA rules instead of authorized chargebacks to Paycom and its customers. ¶¶ 115–123. Paycom also did not receive chargeback information on a timely basis, so it was unable to cancel member's accounts, and suffered additional damages. ¶ 124.

Based upon these factual allegations Plaintiff has asserted a federal RICO claim against AmTrade. ¶¶ 172–83. Plaintiff has also asserted eight state law claims against AmTrade and PRI arising out of the AmTrade scheme: fraud; negligent misrepresentation; breach of contract; breach of implied covenant; conversion; money had and received; accounting and restitution; and constructive trust.

## II.

■ Section 1962(c) of RICO provides that "[i]t shall be unlawful for any person employed by or associated with any enterprise ... to conduct ... such enterprise's affairs through a pattern of racketeering activity...." 18 U.S.C. § 1962(c) (1999) (emphasis added). A complaint asserting a RICO claim must allege the (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity. *Sedima, SPRL v. Imrex Co.,* 473 U.S. 479, 496, 105 S.Ct. 3275, 87 L.Ed.2d 346 (1985); *Eby v. Producers Co-op, Inc.,* 959 F.Supp. 428, 432 (W.D.Mich.1997).

Defendant AmTrade moves to dismiss Plaintiff's RICO claim on the basis that Paycom has failed to properly allege that AmTrade (1) engaged in a pattern of racketeering activity and (2) conducted a RICO enterprise.

### A. Racketeering Activity

In order to establish a "racketeering activity," Plaintiff must allege a predicate act. *Advocacy Org. for Patients & Providers v. Auto Club Ins. Ass'n,* 176 F.3d 315, 322 (6th Cir.1999) (quoting *Kenty v. Bank One, Columbus, N.A.,* 92 F.3d 384, 389 (6th Cir.1996)). "Racketeering activity" is defined in 18 U.S.C. § 1961(1)(B) as including any act "indictable" under certain enumerated federal criminal statutes, including 18 U.S.C. § 1343, which makes wire fraud a crime. *Central Distributors of Beer, Inc. v. Conn,* 5 F.3d 181, 183 (6th Cir.1993).

In this case the predicate acts upon which Plaintiff relies to establish racke-

teering activity by Defendants are wire fraud, bank fraud, and money laundering. Because Plaintiff is alleging fraud to establish racketeering activity, the allegations regarding those predicate acts must be "stated with particularity." FED.R.CIV.P. 9(b). Although the Sixth Circuit reads Rule 9(b)'s pleading requirement liberally, it still requires a plaintiff, "at a minimum, to allege the time, place, and content of the alleged misrepresentation on which he or she relied; the fraudulent scheme; the fraudulent intent of the defendants; and the injury resulting from the fraud." *Advocacy Organization for Patients and Providers v. Auto Club Ins. Ass'n* 176 F.3d 315, 322 (6th Cir.1999) (quoting *Coffey v. Foamex L.P.*, 2 F.3d 157, 161–62 (6th Cir. 1993)). Allegations of fraudulent misrepresentations "must be made with sufficient particularity and with a sufficient factual basis to support an inference that they were knowingly made." *Id.* "Courts have repeatedly held in RICO cases alleging mail fraud and wire fraud as the 'predicate acts,' the underlying fraudulent activities must be pled with particularity." *Eby,* 959 F.Supp. at 431 (quoting *Berent v. Kemper Corp.,* 780 F.Supp. 431, 448 (E.D.Mich. 1991)). *See also Kenty,* 92 F.3d at 389–90 (requiring that predicate act of mail fraud in RICO claim be alleged with particularity). As one court has noted:

> Courts have been particularly sensitive to FED.R.CIV.P. 9(b)'s pleading requirements in RICO cases in which the "predicate acts" are mail fraud and wire fraud, and have further required specific allegations as to *which* defendant caused *what* to be mailed (or made which telephone calls), and *when* and *how* each mailing (or telephone call) furthered the fraudulent scheme.

*Gotham Print, Inc. v. American Speedy Printing Centers, Inc.,* 863 F.Supp. 447, 458 (E.D.Mich.1994) (emphasis in original).

"Mail fraud and wire fraud are proven by showing a scheme or artifice to defraud combined with either a mailing or an electronic communication for the purpose of executing the scheme." *VanDenBroeck v. CommonPoint Mortgage Co.,* 210 F.3d 696, 701–02 (6th Cir.2000). To present a cognizable claim for fraud against Am-Trade, Plaintiff must show that AmTrade "made a material misrepresentation of fact that was calculated or intended to deceive persons of reasonable prudence and comprehension," and must also show that Plaintiff "in fact relied upon that material misrepresentation." *Id.* at 701.

AmTrade contends that Paycom asserts only in general, conclusory terms that Am-Trade committed wire fraud, bank fraud, and money laundering, and that it has not alleged any facts to show that AmTrade (rather than PRI) engaged in any of the necessary predicate acts to establish a pattern of racketeering activity.

█ Fraud connected with mail or wire fraud must involve misrepresentations or omissions flowing from the defendant to the plaintiff. *Central Distributors of Beer,* 5 F.3d at 184. It is not sufficient to allege that unidentified persons associated with AmTrade made representations. *See Blakely v. First Fed. Sav. Bank & Trust,* 93 F.Supp.2d 799 (E.D.Mich.2000) (dismissing complaint that alleged "some of the banks," "bank personnel," "tellers," and "supervisors" engaged in fraud).

█ The relevant allegations concerning AmTrade are found in paragraphs 88 through 126 of the Complaint. There are numerous allegations that "PRI and Amtrade," "Amtrade and PRI," or "PRI and/or Amtrade" made certain representations to Plaintiff. Although Plaintiff indicates that some of the representations were made only by PRI, or by one of the two individuals associated with PRI, nowhere in Plaintiff's Complaint is there an allegation regarding a representation made by AmTrade as opposed to PRI.

Moreover, the only individuals mentioned in connection with the Amtrade scheme who made any representations to Plaintiff are Phillips and Blaugrund. Phillips and Blaugrund are both associated with PRI. There is no allegation in the Complaint that any individual at AmTrade made any representation.

Furthermore, to be actionable, Plaintiff must allege with requisite specificity the false statement of fact on which it relied. In *Kenty* the Sixth Circuit affirmed the district court's dismissal of a RICO claim, stating:

> We agree with the district court that Kenty has not alleged the particular false statement on which she relies in light of the factual basis of fraud alleged in the complaint. She does not explain why the amounts charged to her were not "premiums and finance charges" or how the amounts charged constitute fraud. The allegations of the complaint fail under Rule 9 to identify with particularity the statement made by the Bank in the dealings between Kenty and the bank that was untrue. Hence the misrepresentation element of fraud has not been sufficiently identified to withstand the motion to dismiss.

*Kenty,* 92 F.3d at 391.

Plaintiff's allegations concerning misrepresentations are not specific. The only representations Plaintiff attributes to AmTrade and/or PRI are the following: that they "could and would accept and process for settlement all VISA and MasterCard transactions submitted by Paycom," ¶ 88; that "Paycom could settle its VISA transactions under the July 25th Merchant Agreement with Amtrade," ¶ 91; that "Amtrade was not able to handle the full volume of Paycom's VISA transactions and, therefore, that Paycom would need to find another Acquiring Bank," ¶ 92; that the "June 30th Merchant Agreement was a renewal of the July 25th Merchant Agree-

ment," ¶ 94; that "they could and would accept and process for settlement all VISA and MasterCard transactions submitted by Paycom," ¶ 96; that "they could and would properly establish, register and maintain Paycom's Merchant Account," ¶ 99; that "VISA was allegedly 'shutting down' Paycom's ability to process transactions through its Merchant Account because Paycom had not been properly registered with VISA and VISA allegedly would not allow Amtrade and/or PRI to properly register Paycom," ¶ 102; that "Amtrade would be willing and able to continue acquiring and processing Paycom's VISA transactions throughout the month of September, 2000," ¶ 106; that charges for fines "were appropriate and authorized," ¶ 115; and that "they were "allocating to Paycom only that portion of the fines assessed against Amtrade which was, in fact the responsibility of Paycom," ¶ 116. The alleged representations are no more than promises that Defendants would perform under the Agreement, or that the fines and charges were appropriate. Plaintiff has not sufficiently identified the misrepresentation element of fraud to withstand the motion to dismiss.

Plaintiff contends that AmTrade is improperly construing Rule 9(b) to require Plaintiff to plead all of the specifics of its trial evidence. Plaintiff contends that Rule 9(b) only requires that the circumstances constituting the alleged fraud be plead with particularity, not that all of the precise evidence of fraud be spelled-out in the Complaint. This Court does not disagree with Plaintiff that Rule 9(b) does not require a complaint to disclose all of the specifics of its trial evidence. However, this is not what AmTrade has requested, nor is it what this Court requires. This Court requires Plaintiff to state with particularity sufficient facts to show that AmTrade is liable under RICO. This is what Plaintiff has failed to do in its Complaint

by not differentiating between the actions or representations of PRI and AmTrade.

AmTrade's motion is based on the failure of Paycom to make allegations sufficient to support the RICO claims against AmTrade. Plaintiff has been challenged in AmTrade's motion to dismiss to show what AmTrade did. Despite the focused nature of AmTrade's motion, Paycom's response is to continue to allege what was done by "AmTrade and PRI" rather than by AmTrade, and to describe all of the schemes that were connected under the PRI umbrella, rather than the single scheme AmTrade was allegedly involved in.

In support of its argument that its RICO pleadings are adequate Plaintiff points to the five schemes, all connected by PRI. Plaintiff alleges in its response that it has "more than adequately pled the substance of each of the PRI-related fraudulent schemes," and "the involvement of Amtrade in one or more of those schemes." (Pl.Br. in Opp. at 1). Paycom contends its Complaint "more than sufficiently outlines the schemes designed and perpetrated by Amtrade and the other PRI-related entities through the use of the PRI RICO enterprise." (Pl.Br. in Opp. at 15). Paycom alleges that Amtrade has ignored Paycom's allegations regarding "Amtrade's and the other PRI-related entities' own ongoing lies and deceit." (Pl.Br. in Opp. at 15). Plaintiff contends that its allegations, if true, "clearly paint a picture of actionable fraud on the part of Amtrade and the other PRI-related entities and plainly set forth that such fraud was carried out through the use of interstate and international wires, bank fraud and money laundering." (Pl.Br. in Opp. at 15). Plaintiff contends that it has alleged "repeated misrepresentations regarding not only what would be done by **Amtrade and the PRI-related entities** in the future, but what **Amtrade and the PRI-related entities** (and other parties) *were*

*doing and had already* done throughout the relationship, and the reasons for such actions, made for the purpose of inducing further conduct by Paycom and or justifying the thievery of **Amtrade and the other PRI-related entities.**" (Pl.Br. in Opp. at 19) (italics in original, bold emphasis added).

In its Complaint Plaintiff fails to distinguish between AmTrade and PRI. In its brief in opposition to AmTrade's motion to dismiss Plaintiff continues to lump AmTrade and PRI together, and then furthers the confusion by lumping AmTrade and the other "PRI-related entities" together, even though there are no factual allegations to support any relationship between AmTrade and the other PRI-related entities. While Plaintiff's allegations might be adequate as to Defendant PRI and one or more of the other defendants, they are entirely lacking with respect to specifics against AmTrade. Paycom cannot save its RICO claim against AmTrade by blurring the distinctions between the various parties.

Paycom's refusal, reluctance, or inability to address the specifics of AmTrades' motion is further illustrated by Paycom's citation to an opinion from the United States District Court for the Central District of California where the court denied Defendant PRI's motion to dismiss the RICO claim against it. *See Paycom Billing Services, Inc. v. Payment Resources Int'l,* Case No. CV–01–06868–DDP (MANx) (C.Dist.Cal.). This Court is not bound by a California district court opinion. More importantly, the California district court opinion addresses Plaintiff's RICO allegations against PRI. That opinion does not address the issue presented here, i.e., whether Plaintiff has adequately stated a RICO claim against AmTrade. According to Plaintiff's own allegations, AmTrade and PRI are situated very differently—PRI is

the hub that tied all of the various fraudulent schemes together. AmTrade is a spoke. ¶ 9. The California court's analysis regarding the sufficiency of Paycom's RICO allegations against PRI are accordingly of little assistance to this Court in its analysis of Paycom's RICO allegations against AmTrade.

Despite the comprehensive nature of Plaintiff's Complaint—64 pages and 217 numbered paragraphs—it is not insignificant that Plaintiff has failed to identify a single person at AmTrade who allegedly communicated anything to Paycom, what specifically was communicated, when and where it was communicated, or how it was misleading. A careful reading of the Complaint reveals that there is not one allegation that any person at AmTrade communicated anything to any person at Paycom, let alone anything that could be construed as fraud. The Complaint accordingly fails to properly allege that AmTrade was involved in racketeering activity.

## B. Conduct of a RICO Enterprise

■ Even if Plaintiff's Complaint properly alleged AmTrade's involvement in the predicate acts, the Complaint would still fail because Plaintiff has not sufficiently alleged that AmTrade "conducted" a RICO enterprise.

RICO applies only to a defendant who is "employed by or associated with" an "enterprise" and "conduct[s] or participate[s], directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity." 18 U.S.C. § 1962(c). "In order to 'participate, directly or indirectly, in the conduct of such enterprise's affairs,' one must have some part in directing those affairs." *Reves v. Ernst & Young*, 507 U.S. 170, 179, 113 S.Ct. 1163, 122 L.Ed.2d 525 (1993). RICO liability is not limited to those with primary responsibility for the enterprise's affairs. *Id.* However, "one is

not liable under that provision unless one has participated in the operation or management of the enterprise itself." *Id.* at 183, 113 S.Ct. 1163.

The only enterprise Plaintiff alleges in the Complaint is PRI. ¶ 174. On the issue of operation or management of the enterprise, Plaintiff simply alleges in conclusory fashion that AmTrade

(1) has authority to, and did in fact, directly or indirectly, control, conduct, participate, manage or operate the affairs of the PRI enterprise through a pattern of racketeering activity; and (2) conspired with Phillips and Blaugrund and others to directly or indirectly control, conduct, participate, manage or operate the affairs of the PRI enterprise through a pattern of racketeering activity.

¶ 175. The Complaint contains no factual allegations to support the assertion that Amtrade participated in the operation or management of the enterprise itself. Plaintiff has not alleged that AmTrade was an officer of PRI, that AmTrade made any business decisions for PRI, or that AmTrade had any relationship with PRI beyond furnishing banking services pursuant to a standard contract.

In fact, the conclusion that AmTrade participated in the operation or management of the enterprise itself is contrary to all of the other facts alleged. There are no facts to show that AmTrade exerted control over PRI. The facts are found at ¶¶ 100–124. None of these allegations suggest control or influence by Amtrade over PRI. Moreover, no reasonable inference can be made that AmTrade exerted such control. In a hub and spoke situation the hub generally controls the spokes. PRI was the hub. Amtrade was merely a spoke. ¶ 9.

In *Advocacy Organization for Patients and Providers v. Auto Club Ins. Ass'n*, 176

F.3d 315, 329 (6th Cir.1999), the Sixth Circuit affirmed the dismissal of a RICO claim for failure to state a claim where the complaint simply alleged that "From at least 1992 forward. Defendants associated together to maintain, directly or indirectly, an interest in and/or control of an enterprise which was engaged in a pattern of racketeering activity...." The Sixth Circuit found the complaint inadequate because it simply parroted the language of the RICO statute, it alleged no more than a conclusion, and it alleged no facts in support of the conclusion. *Id.* at 329.

Plaintiff cites *United States v. Oreto*, 37 F.3d 739 (1st Cir.1994), for the proposition that all it needs to show is that AmTrade "participated" in the enterprise. The First Circuit held in *Oreto* that "one may 'take part in' the conduct of an enterprise by knowingly implementing decisions, as well as by making them." *Id.* at 750.

Plaintiff contends that the Complaint contains sufficient allegations to show that AmTrade "participated" in the Amtrade Scheme. For example, Plaintiff has alleged that Amtrade registered Paycom's Merchant Account under the wrong code; failed to correct the mis-registration; inappropriately rejected and/or blocked the settlement of Paycom's VISA transactions; passed unauthorized transactions through the Merchant Accounts; and caused PRI to wrongfully debit directly from Paycom's checking account amounts representing fines wrongfully allocated by AmTrade to Paycom. *See generally* ¶ 178.

This Court does not read *Oreto* to allow RICO liability based solely on participation in an enterprise. *Oreto* made a point of distinguishing the case before it, which involved the liability of employees of the enterprise, from *Reves, supra*, which discussed the liability of accountants who were outsiders to the enterprise. 37 F.3d at 750. According to the *Oreto* court, "the reason the accountants were not liable in *Reves* is that, while they were undeniably involved in the enterprise's decisions, they neither made those decisions nor carried them out; in other words, the accountants were outside the chain of command through which the enterprise's affairs were conducted." AmTrade is not an employee of PRI. Like the accountants at issue in *Reves*, it is an outsider to the enterprise, and there are no allegations that they were in the chain of command through which the enterprise's affairs were conducted.

Moreover, notwithstanding Plaintiff's assertions and its construction of *Oreto*, in the Sixth Circuit it is clear that mere participation is not enough:

> The Supreme Court held that the word "participate," as used in the statutory proscription against participating in the conduct of a RICO enterprise's affairs through a pattern of racketeering activity, has a narrower meaning than "aid and abet." *Reves*, 507 U.S. at 178–79, 113 S.Ct. at 1170. To participate in the affairs of a RICO enterprise, the Supreme Court said, "one must have some part in directing those affairs." *Id.* And although "RICO liability is not limited to those with primary responsibility for the enterprise's affairs," *id.*, one cannot be liable under § 1962(c) unless one has participated, in some degree, "in the operation or management of the enterprise itself." *Id.* at 184, 113 S.Ct. at 1172. The "operation or management" test thus adopted by the Supreme Court in *Reves* is dispositive, we believe, of the RICO claim in the case at bar.

*Stone v. Kirk* 8 F.3d 1079, 1091–92 (6th Cir.1993). *See also Eby v. Producers Co-op, Inc.*, 959 F.Supp. 428, 432 (W.D.Mich. 1997) (dismissing RICO claim where there were no allegations that the defendant knowingly engaged in directing the enterprise).

Furthermore, in a RICO action "[l]iability depends on showing that defendants conducted or participated in the conduct of the '*enterprise's* affairs,' not just their *own* affairs." *VanDenBroeck v. Commonpoint Mortgage Co.,* 22 F.Supp.2d 677, 684 (W.D.Mich.1998) (italics in original) (quoting *Reves,* 507 U.S. at 185, 113 S.Ct. 1163).

The allegations state no more than that AmTrade was a signatory to a Merchant Agreement and that it engaged in certain conduct pursuant to or in violation of that agreement. There is no factual allegation that AmTrade controlled PRI or operated outside the Merchant Agreement as a banking entity.

Because Plaintiff's Complaint does not adequately allege that AmTrade engaged in predicate acts constituting "racketeering activity," and because Plaintiff's Complaint does not adequately allege that Defendant AmTrade conducted or participated in the conduct of an enterprise through racketeering activity, Plaintiff has failed to state a RICO claim against AmTrade. Plaintiff's RICO claim against AmTrade must accordingly be dismissed for failure to state a claim on which relief can be granted.

### C. Leave to Amend

In its brief in opposition to AmTrade's motion to dismiss Plaintiff contends that although it does not believe that additional evidentiary detail is either necessary or appropriate, "should the Court harbor concerns that the Complaint does not sufficiently detail its claims for fraud, Paycom respectfully requests that the Court grant leave for Paycom to amend its complaint to add such additional factual specificity."

(Pl.Br. in Opp. at 25). Plaintiff contends it is "certainly capable of pleading additional facts which would satisfy any heightened pleading standard to adequately state actionable fraud claims against AmTrade," and it "could also detail each specific instance where a representation was made to Paycom by an employee of Amtrade as opposed to solely by Phillips or Blaugrund." (Pl.Br. in Opposition at 24).

Although leave to amend should be freely granted when justice so requires, Fed. R.Civ.P. 15(A), in this case the Court finds that Plaintiff's request to amend is not genuine. Plaintiff has made no effort to respond to the very specific arguments of Defendant AmTrade. Plaintiff has not filed a motion to amend its Complaint or a proposed Amended Complaint. Neither has it articulated in its brief or in its response to the Court's questions on the record what facts it could present that would cure the deficiencies in its Complaint regarding the elements of racketeering or control by AmTrade. Plaintiff's request for leave to amend will accordingly be denied.

### D. Exemplary Damages

Defendant AmTrade has moved for dismissal of Plaintiff's claim for exemplary damages on the basis that the Merchant Agreement contains a Limitation of Liability provision which expressly precludes exemplary damages [4] and because Michigan law does not permit a party to recover exemplary damages for breach of contract. *Kewin v. Massachusetts Mut. Life Ins.*

---

**4.** The June 30, 2000, Merchant Agreement contains a Limitation of Liability provision which provides:

    23.1 IN NO EVENT SHALL AIMS [AMTRADE INTERNATIONAL MERCHANT SERVICES] BE LIABLE UNDER ANY THEORY FOR ANY LOST PROFITS, EXEMPLARY, PUNITIVE, SPECIAL, INCIDENTAL, INDIRECT, OR CONSEQUENTIAL DAMAGES WHETHER BASED ON CONTRACT, TORT, OR ANY OTHER LEGAL OR EQUITABLE THEORY.

*Co.*, 409 Mich. 401, 419, 295 N.W.2d 50 (1980).

Plaintiff did not respond to Defendant AmTrade's argument regarding exemplary damages in its brief in opposition to Defendant's motion. However, at oral argument Plaintiff conceded that this claim was not well taken in Michigan, and represented to this Court that it was withdrawing its claim for exemplary damages.

It appears that Defendant is correct in its assertion that Plaintiff's claim for exemplary damages is not well taken. Accordingly, Defendant's motion for dismissal of Plaintiff's claim for exemplary damages will be granted.

### III.

Defendant PRI has filed a motion to dismiss the state claims against it pursuant to Fed.R.Civ.P. 12(b)(1) for lack of subject matter jurisdiction in the event this Court dismisses the RICO claim against AmTrade. The only basis for federal jurisdiction in this case was Plaintiff's federal claim under RICO against Defendant AmTrade. There is no diversity of citizenship between Paycom and Defendant PRI because they are both residents of California.[5] ¶¶ 4–5. Plaintiff has not asserted a federal claim against PRI. All of Plaintiff's claims against PRI are based upon state law. Paycom has predicated subject matter jurisdiction over PRI on the Court's supplemental jurisdiction under 28 U.S.C. § 1367. ¶ 2.

A district court may decline to exercise supplemental jurisdiction over a claim if the court has dismissed all claims over which it has original jurisdiction. 28 U.S.C. § 1367(c)(3). Although this Court has "broad discretion" in deciding whether to exercise supplemental jurisdiction over state law claims, there is a strong presumption in favor of dismissing supplemental state claims after dismissal of the federal claim that conferred jurisdiction. *Musson Theatrical, Inc. v. Federal Express Corp.*, 89 F.3d 1244, 1254 (6th Cir. 1996). The presumption in favor of dismissal can be overcome in "unusual circumstances." *Id.* at 1255 (citing *Gaff v. Federal Deposit Ins. Corp.*, 814 F.2d 311, 319 (6th Cir.1987)).

There are no "unusual circumstances" in this case that would justify the exercise of supplemental jurisdiction over these state law claims now that the federal claim upon which jurisdiction was predicated has been dismissed. Courts which have dismissed RICO claims have routinely dismissed the pendent state-law claims over which they do not have original jurisdiction. *See Pik-Coal Co. v. Big Rivers Electric Corp.*, 200 F.3d 884, 891 (6th Cir.2000); *VanDenBroeck v. Commonpoint Mortgage Co.*, 22 F.Supp.2d 677, 691 (W.D.Mich.1998), *aff'd*, 210 F.3d 696 (6th Cir.2000). Defendant PRI's motion to dismiss will accordingly be granted.

Upon dismissal of PRI, there will be diversity of citizenship between Paycom and Defendant AmTrade. The Court accordingly retains subject matter jurisdiction over Paycom's remaining state law claims against AmTrade.

An order consistent with this opinion will be entered.

---

**5.** For purposes of diversity of citizenship, a corporation is deemed a citizen both of its state of incorporation and of the state where it has its principal place of business. 28 U.S.C. § 1332(c)(1).