Birda TROLLINGER, Robert Martinez, Tabetha Eddings, and Doris Jewell, individually and on behalf of others similarly situated, Plaintiffs,

v.

TYSON FOODS, INC., Defendant.

No. 4:02–CV–23.

United States District Court, E.D. Tennessee, At Winchester.

July 16, 2002.

Howard W. Foster, Johnson & Bell, Ltd., Chicago, IL, John D. McMahan, McMahan Law Firm, Chattanooga, TN,

Steve W. Berman, Andrew M. Volk, Hagens & Berman, P.S., Seattle, WA, for Plaintiffs.

Roger W. Dickson, Christopher H. Steger, Miller & Martin, Chattanooga, TN, Mark D. Hopson, Thomas C. Green, Sidley, Austin, Brown & Wood, LLP, Washington, DC, for Defendant.

## MEMORANDUM

EDGAR, Chief Judge.

Plaintiffs Birda Tollinger, Robert Martinez, Tabetha Eddings, and Doris Jewell bring this action against defendant Tyson Foods, Inc. ("Tyson") under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961 *et seq.* Plaintiffs are former Tyson employees. They seek to bring this action individually and on behalf of other similarly situated persons.

Plaintiffs allege that Tyson engaged in a scheme to reduce labor costs by hiring illegal immigrants to work in Tyson's Shelbyville, Tennessee plant in violation of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1324(a)(1). They further allege that Tyson's "illegal hiring scheme" involved a pattern of racketeering activity, which served to depress plaintiffs' wages. Plaintiffs seek treble damages and injunctive relief.[1]

Presently before the Court are two motions: (1) Tyson's motion to dismiss under FED. R. CIV. P. 12(b)(6) for failure to state a claim upon which relief can be granted (Court File No. 11), and (2) Tyson's motion to dismiss under FED. R. CIV. P. 12(b)(1) for lack of subject matter jurisdiction (Court File No. 9). Tyson contends that plaintiffs lack standing to bring this lawsuit because their alleged injury does not meet RICO's stringent proximate cause

requirements. Tyson also argues that plaintiffs cannot establish the elements of a RICO claim and that any such claim is preempted by the National Labor Relations Act, ("NLRA"), 29 U.S.C. § 151 *et. seq.* For the following reasons, Tyson's motion to dismiss under FED. R. CIV. P. 12(b)(6) (Court File No. 11) shall be **GRANTED**, and Tyson's motion to dismiss under FED. R. CIV. P. 12(b)(1) (Court File No. 9) is **DENIED.** This case shall be **DISMISSED WITH PREJUDICE.**

## I. Background

The following factual findings are made solely for purposes of ruling on the present motions. Tyson is reportedly the world's largest processor and marketer of poultry. (Complaint ¶ 1). Plaintiffs worked as hourly employees at Tyson's facility in Shelbyville, Tennessee, at various times since 1996. (Complaint ¶¶ 6, 39). At all relevant times, plaintiffs were represented by the Retail, Wholesale and Department Store Union, AFL–CIO ("Union").

The Union, as plaintiffs' exclusive bargaining representative, negotiated with Tyson about the terms and conditions of plaintiffs' employment. Those terms and conditions of employment were memorialized in a collective bargaining agreement ("CBA"), several provisions of which are relevant to this case. The CBA contains a wage scale, in accordance with which all plaintiffs were paid by Tyson. (1999 CBA, Art. XX). Additionally, the CBA addresses the issue of temporary labor. Pursuant to the CBA's terms, Tyson maintained the right to use temporary labor. The number of temporary employees employed at the Shelbyville plant at any time cannot exceed 200. Tyson cannot not offer overtime work to temporary employees until full-

---

1. Also pending before the Court is *United States v. Tyson Foods, Inc., et al.*, No. 4:01–cr-61, a criminal case in which Tyson is charged with various immigration law violations.

time employees have been offered the work. (CBA, Art. III, ¶ 4).

Plaintiffs allege that Tyson engaged in an illegal hiring scheme in an effort to reduce labor costs as follows. Tyson works with a number of recruiters and temporary employment agencies to identify qualified candidates for unskilled labor positions. (Complaint ¶ 19). Those recruiters and temporary agencies identify illegal immigrants as candidates for such positions. They induce illegal immigrants to work for Tyson by providing transportation to Tyson's facility, housing, and other amenities. (Complaint ¶ 19). Tyson pays the recruiters and temp agencies a fee for each illegal immigrant worker it hires. (Complaint ¶ 20).

Plaintiffs further allege the following details. Tyson requires the recruiters and temp agencies to coach illegal immigrants to deny having been smuggled into the United States and to provide those individuals with verification documents. (Complaint ¶ 22). Plaintiffs allege that most of the illegal immigrants who eventually work for Tyson are recruited in Mexico, smuggled across the border, and transported to Tyson's facilities. Tyson is allegedly aware that these workers are in this country unlawfully and that their documentation is false. Plaintiffs assert that Tyson's hiring of illegal immigrants served to depress the wages they were paid by Tyson.

## II. RICO Claim

### A. Standard of Review

Under FED. R. CIV. P. 12(b)(6), a complaint shall be dismissed if it fails to state a claim upon which relief can be granted. The purpose of Rule 12(b)(6) is to permit a defendant to test whether, as a matter of law, the plaintiff is entitled to relief even if everything alleged in the complaint is true. *Mayer v. Mylod,* 988 F.2d 635, 638 (6th Cir.1993); *Nishiyama v. Dickson County,*

*Tennessee,* 814 F.2d 277, 279 (6th Cir. 1987). A complaint should only be dismissed under Rule 12(b)(6) if no set of facts supporting the complaint would entitle the plaintiff to relief. *Haines v. Kerner,* 404 U.S. 519, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972); *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *Saglioccolo v. Eagle Ins. Co.,* 112 F.3d 226, 228 (6th Cir.1997).

To avoid dismissal under Rule 12(b)(6), a complaint must contain direct or inferential allegations comprising all essential, material elements necessary to sustain a claim under a viable legal theory. *Lewis v. ACB Business Services, Inc.,* 135 F.3d 389, 406 (6th Cir.1998). The Court must construe the complaint in the light most favorable to the plaintiff and accept all well-pleaded allegations of fact as true. *Scheuer v. Rhodes,* 416 U.S. 232, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974). Factual allegations capable of more than one reasonable inference must be construed in the plaintiff's favor. *Saglioccolo,* 112 F.3d at 228. The Court may not grant a Rule 12(b)(6) motion to dismiss simply because the Court does not believe the allegations of fact in the complaint. *In re Sofamor Danek Group, Inc.,* 123 F.3d 394, 400 (6th Cir.1997); *Saglioccolo,* 112 F.3d at 228–29. The Court does not, however, have to accept mere legal conclusions and unwarranted inferences of fact. *Lewis,* 135 F.3d at 405; *Grindstaff v. Green,* 133 F.3d 416, 421 (6th Cir.1998).

### B. Analysis

■ In its motion to dismiss for failure to state a claim, Tyson challenges, among other things, the plaintiffs' ability to meet RICO's stringent proximate cause requirement. To sustain a RICO cause of action, the plaintiffs must "plead and prove an actual injury to its business or property 'by reason of' a defendant's 1962 trans-

gression." *Pik–Coal Co. v. Big Rivers Elec. Corp.*, 200 F.3d 884, 889 (6th Cir. 2000). Because of the punishment imposed by RICO's treble multiplier, damages must be made on "competent proof, not based upon mere speculation and surmise." *Fleischhauer v. Feltner*, 879 F.2d 1290, 1299 (6th Cir.1989).

The Supreme Court has said that RICO, by analogy to the Clayton Act, requires that there be a "direct relation between the injury asserted and the injurious conduct alleged." *Holmes v. Securities Investor Protection Corp.*, 503 U.S. 258, 268, 112 S.Ct. 1311, 117 L.Ed.2d 532 (1992). Thus, even if RICO plaintiffs can provide some evidence to trace their damages to a RICO violator, they cannot recover unless those damages were caused directly by the violator, and not indirectly via some third party. *Id.* at 268–69, 112 S.Ct. 1311; *Pik–Coal Co.*, 200 F.3d at 889–91; *Firestone v. Galbreath*, 976 F.2d 279, 285 (6th Cir. 1992); *Sanders Confectionery Prods., Inc. v. Heller Fin., Inc.*, 973 F.2d 474, 487 (6th Cir.1992). One rationale for this proposition is that ". . . the less direct an injury is, the more difficult it becomes to ascertain the amount of a plaintiff's damages attributable to the violation, as distinct from other, independent, factors." *Holmes*, 503 U.S. at 269, 112 S.Ct. 1311.

■ While plaintiffs contend that they suffered damage, RICO requires that a direct, proximate causal relationship be established between the defendant's actions and the resulting damage. Plaintiffs' RICO case cannot survive this motion to dismiss if it is evident from the pleadings that independent factors exist which had an impact on the plaintiffs' economic loss. In short, the plaintiffs must allege (and ultimately prove) that they directly suffered loss of wages because Tyson employed illegal aliens.

One district court recently considered another "illegal aliens" RICO case. In that case, the court found that plaintiffs failed "to allege a sufficiently nonspeculative financial loss that resulted from defendant's wrongdoing . . . ." *Mendoza v. Zirkle Fruit Co.*, 2000 WL 33225470 (E.D.Wash. Sept. 27, 2000). The plaintiffs employees alleged that their employer fruit companies had engaged in unlawful schemes to hire illegal aliens resulting in the depression of plaintiffs' wages. The court noted that a "wide range of factors" influenced wages for orchard workers in the Yakima Valley of Eastern Washington. For example, plaintiffs' wages could have been affected by those other employers paid, the availability of workers, the profitability of the defendant's businesses, and other factors that influence any labor market. 2000 WL 33225470, at *10.

That reasoning applies equally to the present case before this Court. Additionally, in the case at bar, another significant factor affects wage rates. The plaintiffs were represented by the Union, which negotiated a collective bargaining agreement on their behalf. The CBA governed plaintiffs' wage rates. As the wage rates were the product of collective bargaining, plaintiffs cannot demonstrate that those rates were ultimately depressed by the presence of alleged illegal aliens in the work force. In sum, the conclusion that Tyson's hiring of alleged illegal aliens depressed the plaintiffs' wages would require sheer speculation.

As plaintiffs point out, they have alleged that they are direct victims of illegal immigrant hiring. However, this Court need not credit mere legal conclusions and unwarranted inferences of fact. *See LRL Props. v. Portage Metro Hous. Auth.*, 55 F.3d 1097, 1103 (6th Cir.1995). The Court cannot ignore reality and the basic rules of economics. Plaintiffs have made only a

conclusory allegation that they have been damaged, and have not backed that allegation up with any assertion as to how that damage has occurred. Additionally, they have not advanced any rationale for connecting the hiring of illegal aliens to wage depression. Tyson's motion to dismiss under FED. R. CIV. P. 12(b)(6) (Court File No. 11) shall be **GRANTED**.

In deciding this motion, the Court has considered the relevant collective bargaining agreements between the Union and Tyson. As a technical matter, the existence of these collective bargaining agreements was not pled by the plaintiffs. However, the collective bargaining agreements were properly raised, and have been considered by the Court in connection with, Tyson's FED. R. CIV. P. 12(b)(1) motion to dismiss for lack of subject matter jurisdiction. Their existence may be judicially noticed, and it may therefore be considered in connection with this Rule 12(b)(6) motion. CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE, CIVIL 2D § 1363.

### III. Subject Matter Jurisdiction

Tyson argues, in it's FED. R. CIV. P. 12(b)(1) motion, that plaintiffs' RICO claim is preempted by the National Labor Relations Act ("NLRA"), 29 U.S.C. § 151 *et seq.*, because it falls within the primary jurisdiction of the National Labor Relations Board ("NLRB" or "Board") and cannot be entertained by this Court.

There are several issues here which involve whether or not the RICO claim now presented to this Court is preempted by virtue of *San Diego Bldg. Trades Council v. Garmon*, 359 U.S. 236, 79 S.Ct. 773, 3 L.Ed.2d 775 (1959), and its progeny. One of those issues is whether or not Tyson can bear the burden of demonstrating that its conduct in allegedly depressing wages by hiring illegal aliens could be protected or

prohibited by the National Labor Relations Act, ("NLRA"), 29 U.S.C. § 151 *et. seq*. This issue is somewhat murky, and this Court is not prepared to say at this time that it lacks subject matter jurisdiction. Accordingly, Tyson's motion to dismiss under FED. R. CIV. P. 12(b)(1) for lack of subject matter jurisdiction (Court File No. 9) shall be **DENIED**.

A judgment shall enter.