**Victor M. JAVITCH, Plaintiff,**

v.

**James A. CAPWILL, et al., Defendant.**

**No. 3:01 CV 7371.**

United States District Court,
N.D. Ohio,
Western Division.

Sept. 24, 2003.

Victor M. Javitch, Javitch, Block, Eisen & Rathbone, Cleveland, OH, pro se.

John E. Sullivan, III, Sullivan & Sullivan, Matthew P. Moriarty, Tucker Ellis & West, Robert E. Cahill, Brzytwa, Quick & McCrystal, Roger A. Hipp, Brzytwa, Quick & McCrystal, Cleveland, OH, for Plaintiff.

James A. Capwill, Aurora, OH, pro se.

Lance A. Lanier, Buckingham, Doolittle & Burroughs, Akron, OH, Leo R. Ward, Ward & Associates, Cleveland, OH Donald R. Ford, Jr., Warren, OH, Michael D. Joseph, Niles, OH, Rebecca A. Kucera, Tracey L. Turnbull, Porter, Wright, Morris & Arthur, Cleveland, OH, Nelson M. Reid, Kenneth C. Johnson, Bricker & Eckler, Columbus, OH, David G. Finley, Herbert J. Villa, Office of the U.S. Attorney, Northern District of Ohio, Cleveland, OH Denise L. Smith, Office of the Prosecuting Attorney, Portage County, Ravenna, OH, William E. Donnelly, LeClair Ryan, Washington, DC, Christopher S. Williams, Calfee, Halter & Griswold, Cleveland, OH, for Defendants.

Thomas A. Sandelier, III, pro se.

## MEMORANDUM OPINION

KATZ, District Judge.

### BACKGROUND

This case is an outgrowth of the *Liberte v. Capwill*[1] litigation which has spawned

---

1. *Liberte v. Capwill*, 229 F.Supp.2d 799 (N.D.Ohio 2002) revolves around the viatical settlement industry. Plaintiff Liberte Capital LLC ("Liberte") and Intervening Plaintiffs Alpha Capital Group LLC and Integrity Management Partners, LLC (collectively "Alpha") were engaged in the business of purchasing

related litigation both in the state and federal courts. Victor M. Javitch is presently the Receiver [2] in the *Liberte* litigation. In that litigation, Liberte Capital Group, Inc. ("Liberte") and Alpha Capital Group ("Alpha") contend that James A. Capwill ("Capwill"), through the entities Viatical Escrow Services, LLC ("VES") and Capital Fund Leasing ("CFL"), unlawfully diverted investor funds escrowed for insurance premiums or awaiting placement in viatical contracts.

In his capacity as Receiver, Javitch is charged with protection of the property of VES and CFL, including but not limited to instituting such legal proceedings as "necessary or proper to preserve or protect the Receivership property ... as Receiver of VES and/or CFL, against VES, or against CFL in state or federal courts or administrative agencies of forums." *Id.*, Doc. No. 132. Most recently, the Court noted the Receiver's "efforts are necessary not only to vindicate interests within the strict confines of the entities in receivership, but in the direct and larger interest of the investor as well." *Id.*, Doc. No.1982. To this end, the Receiver has been "empowered to represent and pursue the interests of the investors directly." *Id.*

Defendant Union Securities, Ltd. ("Union") is a securities brokerage firm based in Vancover, British Columbia, with no offices in the United States. According to the second amended complaint, a vast portion of its business relates to trades in

"penny stocks." [3] Second Amend. Compl. at ¶ 151. There seems to be no dispute about the following factual allegations. Union allegedly received two $750,000.00 wire transfers from CFL in August 27,- 1998 for a total of $1,500.00.00 in wire transfers from Star Bank in Aurora, Ohio. *Id.* at ¶ 142. The first wire transfer was credited to the account of Vince Norman ("Norman"), a Capwill acquaintance. Union is alleged to have wired $750,000.00 on September 1, 1998 to Norman's account with another brokerage firm, First Montauk. The second $750,000.00 was alleged to have been intended for an account belonging to one Marc Baker of Florida. According to the complaint, it is unclear whether the transfer went directly into Baker's account, however, Baker's Union account demonstrates "significant activity" just before and after instructions were prepared for this second wire transaction. *Id.* at ¶ 148f. There was also a third transaction involving Union concerning a transfer by Capwill to Defendant Thomas Sandelier, of 200,000 shares of 2DoBiz.com on April 23, 2001. The broker handling both the Baker account and the Norman account, as well as the transaction involving 2DoBiz.com, was Trevor Koenig. *Id.* at ¶¶ 144b, 148d, 164b. Based upon these relationships and transactions, the complaint alleges money laundering through Union accounts in furtherance of Capwill's scheme.

---

life insurance policies from terminally ill policyholders willing to sell their rights to the policies. Liberte also solicited investors for policies on the lives of seniors without terminal illness. Investors were solicited by Liberte and Alpha to purchase viatical life insurance investment programs whereby investors were matched in many cases with the policy on the terminally ill person or "viator".

2. Initially Frederick M. Luper was appointed Receiver on July 15, 1999; however, effective June 26, 2000, Javitch replaced Mr. Luper in that capacity.

3. "Penny stocks generally include stocks that trade on the Over the Counter (OTC) market as opposed to NASDAQ or one of the securities exchanges, and whose trading price is relatively low, below $5 per share." Stephen Choi, *Regulating Investors Not Issuers: A Market Based Proposal*, 88 Cal. L.Rev. 279, 307 (2000).

Framed against this background, in his second amended complaint the Receiver charges that Capwill, along with various other individuals and entities, denominated in part as the "JAC Enterprise Defendants," essentially conspired to assist Capwill in hiding or laundering investor money. Union is named as one of the JAC Enterprise Defendants. The seventy-eight page amended complaint contains fifteen separate causes of action against multiple defendants; however for purposes of this motion, the causes of action alleged against Union are as follows:

Count Two–RICO and § 1962(c);

Count Four–RICO and § 1962(d);

Count Five–Aiding and Abetting;

Count Nine–Conspiracy to Defraud;

Count Fourteen–Negligence; and

Count Fifteen–Respondeat Superior.

This matter is before the Court on Defendant Union Securities' motion to dismiss the second amended complaint and attendant replies thereto. For the reasons stated below, the Defendant's motion (Doc. No. 134) is granted in part and denied in part.

## MOTION TO DISMISS

### A. Standard

In deciding a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the function of the Court is to test the legal sufficiency of the complaint. In scrutinizing the complaint, the Court is required to accept the allegations stated in the complaint as true, *Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 2232, 81 L.Ed.2d 59 (1984), while viewing the complaint in a light most favorable to the plaintiffs, *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974); *Westlake v. Lucas,* 537 F.2d 857, 858 (6th Cir.1976). The Court is without authority to dismiss the claims unless it can be demonstrated beyond a doubt that the plaintiff can prove no set of facts that would entitle it to relief. *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957); *Westlake, supra,* at 858. *See generally* 2 JAMES W. MOORE, MOORE'S FEDERAL PRACTICE, § 12.34[1] (3d ed.2003).

### B. Counts Two and Four–RICO & § 1962(c) and (d).

Under 18 U.S.C. § 1962(c):

It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

■ In order to demonstrate a violation under RICO, a plaintiff must establish the following elements:

1) that there were two or more predicate offenses; 2) that an "enterprise" existed; 3) that there was a nexus between the pattern of racketeering activity and the enterprise; and 4) that an injury to business or property occurred as a result of the above three factors.

*VanDenBroeck v. CommonPoint Mortgage Co.,* 210 F.3d 696, 699 (6th Cir.2000). The Racketeer Influenced and Corrupt Organizations Act ("RICO") was enacted in the 1970s as a response to the war against syndicated crime and established both criminal as well as civil remedies. *See* Andrew P. Bridges, *Private RICO Litigation Based Upon "Fraud in the Sale of Securities,"* 18 Ga. L.Rev. 43, 44 (1983). However, in response to a resulting flood of civil litigation, the Private Securities Litigation Reform Act ("PSLRA") of 1995 was passed to "deter[ ] the filing of some frivolous suits in federal court, but it also ma[d]e[ ] litigation on behalf of defrauded investors more difficult." *See,* Richard W.

Painter, *Responding to a False Alarm: Federal Preemption of State Securities Fraud Causes of Action,* 84 Cornell L.Rev. 1, 34–35 (1998). These amendments addressed, for example, class action procedures, pleading standards, as well as discovery limitations. *See, e.g.,* American Law Institute–American Bar Association Continuing Legal Education July 24–26, 2003, Current Developments in Federal Securities Law, *Securities Law Disclosures After Sarbanes–Oxley,* Herbert S. Wander, SJ014 ALI–ABA 547. These modifications to RICO have no doubt made it more difficult for such claims to succeed in attempts to stem the flow of frivolous litigation.

Union requests summary judgment on this count on the basis that the complaint fails to: (1) allege conduct or participation in conduct of a racketeering enterprise; (2) adequately allege Union engaged in a pattern of racketeering; and (3) allege Union committed the predicate acts with requisite particularity. The Court now turns to discuss each of this issues *in seriatim.*

### 1. *Conduct or Participation in Racketeering Enterprise*

The Supreme Court in *Reves v. Ernst & Young,* 507 U.S. 170, 113 S.Ct. 1163, 122 L.Ed.2d 525 (1993), took up the issue of the operation or management test under 18 U.S.C. § 1962(c). In *Reves,* purchasers of demand notes from a farmer's cooperative brought suit against the cooperative's accountants alleging violations under RICO. The Defendants were charged with failing to inform the cooperative's board as to specific findings regarding the cooperative's financial viability contained in the full audit. The investors argued, unsuccessfully, that the auditors' conduct met the operation or management test under § 1962(c).

The *Reves* Court first looked to the statutory language, noting that:

[C]ontext is important, and in the context of the phrase "to conduct ... [an] enterprise's affairs," the word indicates some degree of direction....

We conclude, therefore, that as both a noun and verb in this subsection "conduct" requires an element of direction. *Id.* at 178, 113 S.Ct. at 1169. The Court then turned to the legislative history before concluding "that one is not liable under that provision [§ 1962(c)] unless one has participated in the operation or management of the enterprise itself." As rejected by the Court, *Id.* at 177–178, 113 S.Ct. at 1169, and noted by others, "mere participation in the activities of the enterprise is insufficient/ the defendant must participate in the operation or management of the enterprise." *Abbott v. Chemical Trust,* 2001 WL 492388 (D.Kan.2001), citing *Goren v. New Vision Int'l, Inc.,* 156 F.3d 721, 727 (7th Cir.1998). *See also, Stone v. Kirk,* 8 F.3d 1079, 1091–1092 (6th Cir.1993) (applying the *Reves* operation or management test).

In the present action, the Receiver contends that "although Union may not have made any of Capwill's key illicit decisions, it acted pursuant to Capwill's direct or indirect instructions in connection with Capwill's account, Norman's account and potentially even Baker's account. Moreover, Union did all this either knowing or deliberately ignoring the illicit nature of Capwill's affairs." Pltf.'s Memo. at p. 12. Even construing the Plaintiff's factual allegations as true, the allegations fail to state a claim as to the operation or management test advocated by *Reves.*

A similar argument was rejected by the district court in *Paycom Billing Services, Inc. v. Payment Resources Int'l,* 212 F.Supp.2d 732, 740 (W.D.Mich.2002). Although not a brokerage case, the defendant bank in *Paycom* was accused of RICO violations in connection with the

processing of credit card transactions which resulted in substantial financial losses to the plaintiff processing company. The district court rejected allegations the bank "participated" in the operation or management of the enterprise simply based upon its conduct relative to providing banking services for the other RICO defendant, PRI:

> Plaintiff has not alleged that AmTrade was an officer of PRI, that AmTrade made any business decisions for PRI, or that AmTrade had any relationship with PRI beyond furnishing banking services pursuant to a standard contract.

> In fact, the conclusion that AmTrade participated in the operation or management of the enterprise itself is contrary to all of the other facts alleged. There are no facts to show that AmTrade exerted control over PRI.

> The facts are found at ¶¶ 100–124. None of these allegations suggest control or influence by Amtrade over PRI. Moreover, no reasonable inference can be made that AmTrade exerted such control. In a hub and spoke situation the hub generally controls the spokes. PRI was the hub. Amtrade was merely a spoke. ¶ 9.

*Id.* at 739. On this basis, the RICO claims against the bank were dismissed.

Similarly, a defendant bank which handled self-directed IRAs for individuals wishing to purchase investments from another defendant, Chemical Trust, was also the subject of RICO allegations insofar as their participation was characterized as transferring funds from investors to accounts controlled by Chemical Trust. *Abbott v. Chemical Trust*, 2001 WL 492388 (D.Kan.2001) (unpublished). The investments were actually a Ponzi scheme which resulted in the investors bringing suit against multiple parties, including the defendant bank. Finding that the bank merely provided services "as a custodian, including executing the purchase orders of investors," the district court did not find the parties' business relationship amounted to anything more in the absence of the bank's direction of Chemical Trust. *Id.* at *15. *See also Schmidt v. Fleet Bank*, 16 F.Supp.2d 340, 347 (S.D.N.Y.1998) (merely providing financing to a RICO enterprise does not constitute participation in the affairs of the enterprise).

In this instance, the allegations do not contend Union's conduct "controlled or directed" the enterprise. Stated differently, was the account activity conducted by Union at Capwill's direction sufficient to meet the test of managing or directing the affairs of the enterprise? Union acted according to Capwill's directives. Even assuming Union turned its head to Capwill's activities, "[s]imply performing services for an enterprise, even with knowledge of the enterprise's illicit nature, is not enough to subject an individual to RICO liability under § 1962(c)." *United States v. Swan*, 250 F.3d 495, 499 (7th Cir.2001), quoting *Goren v. New Vision Int'l, Inc.*, 156 F.3d 721, 727 (7th Cir.1998). Having reviewed the second amended complaint in its entirety, there is no allegation upon which Union's conduct amounts to control or direction of the enterprise. Union merely carried out Capwill's directives (and others at Capwill's behest) in accordance with their business relationship. As the allegations fail to satisfy the requirements of the operation or management test under *Reves*, the Court finds this element under § 1962(c) to be insufficient.

### 2. *Pattern of Racketeering*

▮ Assuming *arguendo* satisfaction of the operation or management test, Plaintiff must next demonstrate that Union engaged in a pattern of racketeering activity.

The pattern requirement as defined by the Supreme Court was discussed by the

Sixth Circuit in *Saglioccolo v. Eagle Insurance Co.*, 112 F.3d 226, 229 (6th Cir.1997) as follows:

In *H.J. Inc. v. Northwestern Bell Tel. Co.*, 492 U.S. 229, 240, 109 S.Ct. 2893, 2901, 106 L.Ed.2d 195 (1989), the Supreme Court explained that the pattern requirement is satisfied by showing (1) a relationship between the predicate acts and (2) the threat of continued activity. *Id.* at 240, 109 S.Ct. at 2901. Expanding on the continuity component, the Court stated:

"Continuity" is both a closed and open-ended concept, referring either to a closed period of repeated conduct, or to past conduct that by its nature projects into the future with a threat of repetition. It is, in either case, centrally a temporal concept—and particularly so in the RICO context, where what must be continuous, RICO's predicate acts or offenses, and the relationship these predicates must bear one to another, are distinct requirements. A party alleging a RICO violation may demonstrate continuity over a closed period by proving a series of related predicates extending over a substantial period of time. *Predicate acts extending over a few weeks or months and threatening no future criminal conduct do not satisfy this requirement: Congress was concerned in RICO with long-term criminal conduct.* Often a RICO action will be brought before continuity can be established in this way. In such cases, liability depends on whether the threat of continuity is demonstrated.

*Id.* at 241–42, 109 S.Ct. at 2901–02 (emphasis added) (internal citation omitted)

First, with regard to the relationship requirement, the Sixth Circuit requires the predicate acts alleged to "have the same or similar purposes, results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated events." *Vild v. Visconsi*, 956 F.2d 560, 566 (6th Cir.), *cert. denied* 506 U.S. 832, 113 S.Ct. 99, 121 L.Ed.2d 59 (1992) (quotation omitted). *See also, Heller Financial, Inc. v. Grammco Computer Sales*, 71 F.3d 518, 525 (5th Cir.1996). In this case, the alleged acts by Union which are the subject of this test include two wire transfers of $750,000 each as well as the transfer of 2DoBiz.com shares as between Capwill and Sandelier. According to the second amended complaint, "Union's conduct amounted to a de facto custom, practice, or policy to encourage money laundering through its facilities." Second Amended Compl. at ¶ 169.

The participants appear to be the same as do the victims in this instance. The methods of commission, transfer of funds or shares are also alleged to have been completed in a similar manner. Plaintiff argues that the acts are interrelated as they are linked to Capwill's attempt to launder money and hide assets. Considering the factual allegations as true, the Court must conclude the relatedness requirement of the Union transactions is sufficient under the test in *H.J.*

■ The second aspect of this test, continuity, is more problematic. As noted by this Circuit in *Columbia Natural Resources, Inc. v. Tatum*, 58 F.3d 1101, 1110 (6th Cir.1995), *cert. denied*, 516 U.S. 1158, 116 S.Ct. 1041, 134 L.Ed.2d 189 (1996), the factors for consideration include:

[T]he length of time the racketeering activity existed; the number of different schemes (the more the better); the number of predicate acts within each scheme (the more the better); the variety of species of predicate acts (the more the better); the distinct types of injury (the more the better); the number of victims (the more the better); and

the number of perpetrators (the less the better).

In an example of inadequate continuity, the plaintiff in *Saglioccolo* alleged five predicate acts (in the nature of extortion) which occurred over a one month period. The Sixth Circuit found the alleged predicate acts did not contain a future threat thereby failing to meet the threat of continued activity found to be required by the *H.J.* Court. Earlier, the Sixth Circuit affirmed dismissal of a § 1962(c) claim where the predicate acts took place over a seventeen month period of time. *Vemco, Inc. v. Camardella*, 23 F.3d 129 (6th Cir.), *cert. denied*, 513 U.S. 1017, 115 S.Ct. 579, 130 L.Ed.2d 495 (1994). However, both of these cases involved a single scheme to defraud a single victim and were not deemed to meet the continuity plus requirement.

As contrasted with those examples, here the number of victims, the investors, are numerous. The length of the conduct alleged spans from August, 1998, to April, 2001. The number of alleged predicate acts, three transfers, is small given the time frame during which the conduct is stated to have occurred. The distinct type of injury can be quantified as financial and the number of alleged perpetrators include not only the Defendant but Capwill, Norman, and Sandelier. The common denominator in these circumstances, as alleged in the second amended complaint, is the direction of funds by Capwill. In sum, there is sufficient detail in the second amended complaint to sustain a finding of continuity to support a pattern for purposes of the RICO allegations. *See also, FRC Intern'l, Inc. v. Taifun Feuerloschgeratebau und Vertriebs GmbH*, Case No. 3:01 CV 7533, 2002 WL 31086104 *15–16 (N.D.Ohio 2002) (unpublished) (allegations sounding in RICO met relatedness and continuity as the alleged fraud had same purpose and result of defrauding the buyer and that

two buyers were victims of the fraud). *Cf. Yochim v. First of America Bank–Michigan, N.A.*, 1994 WL 791186 (E.D.Mich. 1994) (unpublished) (defendant bank who held custodian accounts was not deemed to have engaged in racketeering activity where it simply carried out instructions on purchases pursuant to an agreement with investment group).

### 3. *Existence of an Enterprise*

■ One critical factor necessary to establish a RICO claim is the existence of an enterprise. The statutory language defines an enterprise as "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4). An " 'enterprise' is not the 'pattern of racketeering activity;' it is an entity separate and apart from the pattern of activity in which it engages." *United States v. Turkette*, 452 U.S. 576, 583, 101 S.Ct. 2524, 2529, 69 L.Ed.2d 246 (1981). This Circuit has stated that an association-in-fact may be shown by "an ongoing organization, its members must function as a continuing unit, and must be separate from the pattern of racketeering activity in which it engages." *Frank v. D'Ambrosi*, 4 F.3d 1378, 1386 (6th Cir.1993) (citation omitted).

In *VanDenBroeck v. CommonPoint Mortgage Co.*, 210 F.3d 696 (6th Cir.2000), borrowers brought a class action under RICO against a lender challenging the reasonableness of the lender's undisclosed fees. In noting that "a certain amount of organizational structure [ ] eliminates simple conspiracies from the [RICO] Act's reach," the Circuit reiterated the requirement of "some minimal level of organizational structure" evincing a hierarchial structure. *Id.* at 699–700. The defendant in *VanDenBroeck* obtained the borrower, made the loan to a borrower at a different

rate based upon the secondary lender's proposed rate of interest, before selling the loan to the secondary lender and collecting a fee. The district court determined that the absence of a discrete number of lenders meant "that this conspiracy could have transpired with *any* lender in the secondary lending market." *Id.* (Emphasis added.) Based upon these allegations, the relationship between the defendant and lenders demonstrated nothing more than a business relationship which failed to meet the enterprise requirement that the enterprise functioned as a continuous unit. *Id.*

■ Dismissal of a RICO complaint was likewise affirmed where the complaint essentially listed a string of entities allegedly comprising the enterprise and then listed a string of supposed racketeering activities but made no factual allegations suggesting the behavior of those entities was coordinated such that they functioned as a continuing unit. *Begala v. PNC Bank, Ohio, Nat'l Assoc.*, 214 F.3d 776, 781 (6th Cir. 2000), *cert. denied*, 531 U.S. 1145, 121 S.Ct. 1082, 148 L.Ed.2d 958 (2001). "A properly pled RICO claim must cogently allege activity 'that would show ongoing, coordinated behavior among the defendants that would constitute an association-in-fact.'" *Id.* quoting *Frank v. D'Ambrosi*, 4 F.3d at 1386.

In this case, the characterization of the racketeering enterprise, denominated as an association-in-fact enterprise, is stated as follows:

187. All JAC Enterprise Defendants are part of a "union or group of individuals associated in fact" within the meaning of 18 U.S.C. § 1961(4).

188. At all relevant times, Capwill controlled the JAC Enterprise and its affairs, either through direct personal control, or indirectly through entities he controlled, or indirectly through persons acting on his behalf, said persons includ-

ing but not being limited to Sandelier, Susan Eckstein Elam and Andrew Capwill.

■ "It is not enough to establish that a defendant corporation through its agents committed the predicate acts in the conduct of its own business." *Whelan v. Winchester Production Co.*, 319 F.3d 225, 229 (5th Cir.2003) (citation omitted). An association based upon a business relationship does not constitute an enterprise under § 1962(c) as the enterprise must have an existence apart from its predicate acts in order to establish that the enterprise functioned as a continuing unit. *Id.* at 230. *See also, Stachon v. United Consumers Club, Inc.*, 229 F.3d 673, 675–676 (7th Cir. 2000) (dismissing RICO claim for failing adequately to allege existence of an enterprise noting that such an enterprise must be more than a group of persons who engage in a pattern of racketeering); *FRC Intern'l, Inc. v. Taifun Feuerloschgeratebau und Vertriebs GmbH*, Case No. 3:01 CV 7533, 2002 WL 31086104 *14 (N.D.Ohio 2002) (dismissing RICO claim wherein it was alleged that two particular parties associated for nothing other than an action to commit fraud, which was deemed insufficient to constitute an enterprise).

■ Considering the requirements necessary to establish the existence of an enterprise, viewing the second amended complaint in its entirety, the allegations contained therein point to nothing more than a business relationship between Union and Capwill and his associates. Even assuming improprieties on behalf of Union and Capwill, "simply conspiring to commit a fraud is not enough to trigger the Act if the parties are not organized in a fashion that would enable them to function as a racketeering organization for other purposes." *VanDenBroeck v. CommonPoint Mortgage Co.*, 210 F.3d at 699. Because the RICO claims as against Union fail to

establish the requisite structure necessary to establish an enterprise, the RICO claims are not viable.

In sum, the failure to allege the management or operation of the enterprise, as well as the lack of a viable enterprise, warrant dismissal of the pending RICO claims. Based upon those deficiencies, the Court does not address the adequacy of the alleged predicate acts. Accordingly, Union's motion to dismiss Counts Two and Four is granted.

### C. Remaining Claims

As to the remaining causes of action against Union as stated in Counts Five, Nine, Fourteen and Fifteen, the Defendant has not moved for dismissal and requests the Court decline exercising its supplemental jurisdiction.

 The District Court may decline to exercise supplemental jurisdiction over a claim if it has dismissed all of the claims over which it has original jurisdiction. 28 U.S.C. § 1367(c)(3). As a general rule, if the claims over which the Court has original jurisdiction are dismissed before trial, the state claims should be dismissed as well. *United Mine Workers v. Gibbs,* 383 U.S. 715, 726, 86 S.Ct. 1130, 1136, 16 L.Ed.2d 218 (1966). In this instance, however, the Court is of the view there is good reason to depart from the general rule in this case. First of all, as a related case to the *Liberte* litigation, this and many other case have been transferred to the undersigned's docket. This case, like the other related cases, has spent its fair share of time on this Court's active docket, and the Court cannot in good conscience dismiss the state claims when they will in reality be refiled in federal court and no doubt reassigned to the undersigned. The interests of judicial economy, fairness, and comity favor this Court retaining those remaining claims Therefore, the Defendant's

request to dismiss the state law claims is not well taken.

### Conclusion

Accordingly, and for the aforementioned reasons, Defendant Union's motion to dismiss (Doc. No. 134) is granted as to Counts Two and Four but denied as to the remaining claims (Counts Five, Nine, Fourteen and Fifteen). Finally, the Court will schedule a telephonic status conference on October 15, 2003 at 9:00 a.m.

IT IS SO ORDERED.

### *JUDGMENT ENTRY*

For the reasons stated in the Memorandum Opinion filed contemporaneously with this entry, IT IS HEREBY ORDERED, ADJUDGED and DECREED that Defendant Union's motion to dismiss (Doc. No. 134) is granted as to Counts Two and Four but denied as to the remaining claims (Counts Five, Nine, Fourteen and Fifteen).

FURTHER ORDERED that a telephone status conference is set for October 15, 2003 at 9:00 a.m.